7IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**WALANDO KENNEY,**

   **Petitioner,**

**v.**           **Civil Action No. 5:17cv135**
               **(Judge Stamp)**

**STEPHEN KALLIS,**

   **Respondent.**

<u>**REPORT AND RECOMMENDATION**</u>

On August 23, 2017, the *pro se* petitioner initiated this case by filing an Application for Habeas Corpus pursuant to 28 U.S.C. § 2241.  The petitioner challenges the Bureau of Prisons calculation of his sentence and, in particular, his pre-trial detention time during which he alleges he was in the primary custody of federal officials. On September 12, 2017, the respondent was directed to show cause why the petition should not be granted. On January 2, 2018, the respondent filed a Motion to Dismiss or, alternatively, for summary judgment. On January 3, 2018, a <u>Roseboro</u> Notice was issued, and on March 15, 2018, the Petitioner filed a response. Pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2, the undersigned now issues his Report and Recommendation.

## I. <u>FACTUAL BACKGROUND</u>

On October 18, 2012, the petitioner was arrested by Michigan state authorities following  a traffic stop after the officers learned that he had multiple outstanding felony warrants. Michigan state authorities also discovered heroin in the car the petitioner was driving. The petitioner was then taken  to the Taylor Michigan Police Department.

On October 19, 2012, federal authorities arrested the petitioner for drug trafficking.

On May 21, 2013, the United States District Court for the Eastern District of Michigan sentenced the petitioner to 92 months in prison for heroin trafficking. The judgment contained no recommendation regarding whether the petitioner's federal sentence should be concurrent or consecutive to any other sentence.

Seven months later, on December 18, 2013, the petitioner was returned to Michigan state custody. On January 23, 2014, a Michigan state court sentenced the petitioner to between two and ten years in state custody for operating a chop shop and receiving stolen motor vehicles, the charges associated with the outstanding warrants for which Michigan state authorities originally arrested him.

On November 20, 2015, the United States District Court for the Eastern District of Michigan reduced the petitioner's federal heroin trafficking sentence from 92 months to 77 months. On November 9, 2016, Michigan state authorities released the petitioner into the custody of the United States Marshal Service.

The BOP computed the petitioner's sentence to begin on November 9, 2016, the date they maintain he was released by state authorities into federal custody. The BOP awarded the Petitioner prior custody credit toward his federal sentence to reflect 385 days that the BOP maintains that the Petitioner spent in Michigan state custody that were not credited by Michigan state authorities towards his state sentence.[1] The BOP's current sentence calculation results in the petitioner having a current projected release date of May 21, 2021.[2]

---

[1]The BOP maintains that the following credits were applied: (1) 10/18/12 - 10/18/12; (2) 10/24/12-01/10/13; (3) 1/31/2013-5/16/2013; and (4) 5/30/2013 - 12/15/13. ECF No. 21-1 at 85.

[2]A calculation on June 22, 2017, indicated that the petitioner's projected release date, via good conduct time, was June 11, 2022, and that calculation awarded him no prior custody credit. ECF No. 1-5 at 3. It would appear that the more current calculation was prepared on August 11, 2017, and was updated to award jail credits not applied by the state. ECF No. 21-1

## II. <u>THE PLEADINGS</u>

**A. The Petition**

Although initially arrested by the State of Michigan on October 17, 2012, the petitioner appears to allege that he was in the primary custody of federal authorities following his subsequent arrest for drug trafficking  on October 18, 2012, and remained in the sole physical custody of federal authorities his entire pre-trial detention period until he was sentenced on May 21, 2013. The petitioner further alleges that he remained in federal custody for seven months, serving his sentence, until he was transferred on a either a writ under the Interstate Agreement of Detainers or a writ of habeas corpus ad prosequendum. Accordingly, the petitioner argues that the BOP should calculate his federal sentence by commencing it on May 21, 2013, the date it was imposed, award him pre-trial credit for the period October 18, 2012 to the date his sentence was imposed, and award him credit for each day since his federal sentence was imposed. The petitioner alleges that if properly calculated as outlined, he is eligible for release via good conduct time on May 18, 2018, and was eligible for home detention beginning November 18, 2017.

With respect to exhaustion of administrative grievances, the petitioner indicates that they were initiated, "but no result has been returned." ECF No. 1 at 7.[3] While acknowledging that exhaustion is generally required prior to seeking review under § 2241, the petitioner observes that it is not a statutory requirement, but rather, is judicially imposed. He argues,

---

at 85..

[3]The records submitted by the respondent establish that the petitioner did not attempt any grievance procedure until a BP-9 was received at FCC Hazelton on October 2, 2017, after he had initiated this action. The grievance, which dealt with jail time credit, was rejected on October 5, 2017, because the petitioner had not first attempted to informally resolve his complaint within his federal correctional facility. ECF No. 21-2 at 7.

as such, it is within the court's discretion to waive exhaustion in certain circumstances. The petitioner then argues that he will suffer irreparable harm in the form of additional incarceration if the Court does not excuse him from exhausting his administrative grievances.

For relief, the petitioner requests an order from the court instructing the Bureau of Prisons to credit his sentence from his arrest date until present time.

**B. Motion to Dismiss or for Summary Judgment**

In support of their alternative motions, the respondent argues that:

1. The petitioner concedes, and BOP records confirm, that he did not administratively exhaust his sentence computation before he filed this lawsuit and has not established that the administrative review would be futile; and

2. The BOP retains exclusive discretion to compute federal prisons sentence, and the BOP properly exercised that discretion to compute the petitioner's federal sentence.

### III. <u>STANDARD OF REVIEW</u>

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. <u>Mylan Labs, Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir.1993); *see also* <u>Martin</u>, 980 F.2d at 952.

4

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Courts have often cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46.  In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim.  Id.

5

**B.  Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases.  *See* Blackledge v. Allison, 431 U.S. 63, 80 91977).  So too, has the Fourth Circuit Court of Appeals.  Maynard v. Dixon, 943 F.2d 407 (4ᵗʰ Cir. 1991).  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party.  Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4ᵗʰ Cir. 1990).  However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986).  To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]."  Id.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4ᵗʰ Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation.  Anderson, 477 U.S. at 248.  It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

## IV.  <u>ANALYSIS</u>

Generally, a federal inmate must exhaust available administrative remedies before he files a habeas petition.  See, e.g., Mcclung v. Shearin, 90 Fed.Appx. 444 (4th Cir. 2004);

Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001);  Martinez v. Roberts, 804 F.2d 570 (9th Cir. 1996) (federal inmates are required to exhaust their administrative remedies prior to filing a 2241 petition); Moscato v. Federal Bureau of Prisons,  98 F.3d 757 (3d Cir. 1996) (same);Greene v. Warden FCI Edgefield, 2017 WL 1458997 (D.SC  2017) (same); McCallister v. Haynes, 2004 WL 3189469 (N.D.W.Va. 2004) (same).   In particular, it has been noted that the following policies are promoted by requiring the exhaustion of administrative remedies: "(1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve  the  efficiency  of  the  administrative  process;  (5)  to  conserve  scarce  judicial resources . . . ;  (6) to give the agency a chance to discover and correct its own errors; and (7)  to  avoid  the  possibility  that  'frequent  and  deliberate  flouting  of  the  administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its  procedures.'"Alexander  v.  Hawk,  159  F.2d  1321,  1327-28)  (11th  Cir.  1998)  (internal citation omitted)..

However, because the statute authorizing habeas lawsuits does not expressly require administrative exhaustion, Reeder v. Phillips, 2008 WL 2434003 at *2 (N.D. W.Va. June 12, 2008), this Court retains discretion to disregard the exhaustion requirement in "pressing circumstances." Id. at *3. However, exhaustion should only be excused where administrative review would be futile. Jaworski v. Gutierrez, 509 F. Supp. 2d 573 (N.D.W.Va. 2007). Therefore, exhaustion is required unless the reviewing agency is certain to rule adversely. Reeder, 2008 WL 2434003 at *3.

In this case, the petitioner acknowledges that he has not exhausted his administrative

remedies.  However, exhaustion of administrative remedies would clearly be appropriate in this instance given that the BOP is charged with the responsibility of sentence computation and has expertise in this area.  See United States v. Wilson, 503 U.S. 329, 112 S.Ct. 1351 (1992) ( the Attorney General, through the BOP, has the responsibility for administering federal sentences); United States v. Lucas, 898 F.2d 1554 (11th Cir. 1990) (the power to grant jail time credit lies exclusively with the Attorney General).

While this Court has in the past excused a petitioner from exhausting his administrative grievances, it has only done so where the record before it established no unresolved issues. However, the record now before this Court raises questions which would require a supplemental response from the respondent before a reliable recommendation could be issued on the petition. Questions such as whether the petitioner was released on bond following his arrest by state officials on October 17, 2018, thereby depriving the state of primary jurisdiction. Whether the absence of writs issued by the District Court during the pendency of the federal criminal proceedings indicates that the state relinquished primary custody. Why the petitioner was "boarded" in a federal facility while the state criminal proceedings were ongoing. How the BOP Designation and Sentence Computation Center determined that 385 days were spent in Michigan State custody but were not credited to his state sentence.  By requiring the petitioner to attempt resolution of these issues within the Bureau's administrative remedy process, the Court would be promoting many of the policies which underlie the exhaustion principle.  For example, the administrative remedy process could develop the necessary factual background upon which the petitioner's claim is based, allow the BOP the opportunity to exercise its discretion and apply its expertise in this area, conserve scarce judicial resources, give the BOP a chance to discover and correct its own

possible error, and avoid the deliberate flouting of the administrative process.

The undersigned acknowledges that the petitioner believes that his properly calculated release date is May 18, 2018. However, the mere fact that he may be required to serve more time does not justify excusing him from exhausting his administrative grievances.  Had he followed proper procedure, and begun exhausting his grievance procedure soon after the June 29, 2017, computation, he could have filed a properly exhausted petition in a timely fashion, which could have received a final ruling near May 18, 2017. There is no suggestion that the BOP would have been certain to rule adversely, and if the petitioner had presented the claims he present in this petition and in his reply, he could have been provided relief, or an explanation which might have satisfied him that no relief would be available from this Court.

### IV.   Recommendation

For the foregoing reasons, the undersigned recommends that respondent' Motion to Dismiss or, alternatively, for summary judgment [ECF No. 20] be **GRANTED**, and the petitioner's § 2241 petition be **DISMISSED without prejudice** for the failure to exhaust administrative remedies.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections.  A copy of such objections should also be submitted to the Honorable Frederick P. Stamp. Jr., United States District Judge.  Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.  28 U.S.C. § 636(b)(1); United States v.

Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk is DIRECTED TO send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket and provide a copy to counsel of record via electronic means. Further, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED**  to terminate the Magistrate Judge association with this case.

DATED: May 10, 2014.

*/s James E. Seibert*

JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE

10